# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00942-SCT

*EVELYN PRESCOTT, JAMES EDWARD NICKELSON, JACK LONG, EARLINE KEITH, EDDIE KELLEY, JAMES MIKE ANDERS, GARY WAYLON HOWELL, RAY MYRICK, CLARENCE M. SHOWS, GEORGE R. PARKER, ROY D. DICKENSON, DARNELL PRESCOTT, DEBRA D. PRESCOTT, AMON D. MERRITT, SANDRA MERRITT, RONALD E. WEST, WANDA JO WEST, BRENDA J. FORTENBERRY, CHARLES F. FORTENBERRY, SR., CARROL C. KEITH, ELVIN KEITH, EVA DEE KEITH, KENNIS KEITH, CAROL W. KEITH (RITCHIE), HILDA B. LONG, JESSIE JACK LONG, BETTY FRANK WELBORN, JERALD LEON WELBORN, BRUCE R. WILLCUTT, BILLY A. ALBAIR, JR., FRANCES ALBAIR, JOSEPH A. VAYDA, SR., RUTH M. VAYDA, ELVA MAE VERRETT, LINDA DIANE ALLMAN, RANDALL ALLMAN, EMELIE DIXON, JAMES JOE DIXON, ARLIE D. HODGES, DARRYL HURT, MARY F. HURT, CAROLYN KEITH, DELTON KEITH, ROGER KEITH, CLARA P. KELLEY, EDDIE L. KELLEY, FRANCES DARLENE KELLEY, SAMUEL MARK KELLEY, FRANK F. RODLER, BILLIE ELAINE ROGERS, WILLIAM H. ROGER, JR., RAYMOND K. SCHNEIDER, ROSALAND C. SCHNEIDER*

*v.*

*LEAF RIVER FOREST PRODUCTS, INC., LEAF RIVER CORPORATION, GREAT NORTHERN NEKOOSA CORPORATION, GEORGIA-PACIFIC CORPORATION, WARREN RICHARDSON, AND ACKER SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/1996 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES R. HAYDEN |
| | DARRYL A. HURT |
| | DARRYL A. HURT, JR. |
| | LARRY O. NORRIS |
| | JOHN M. DEAKLE |
| ATTORNEYS FOR APPELLEES: | JAMES H. HEIDELBERG |

JOE SAM OWEN

W. WAYNE DRINKWATER, JR.

JOE R. COLINGO

MARGARET STEWART OERTLING

NATURE OF THE CASE:   CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE

DISPOSITION:   AFFIRMED - 8/12/1999

MOTION FOR REHEARING FILED:   3/18/99

MANDATE ISSUED:


## CONSOLIDATED WITH

## NO. 96-CA-00977-SCT

*GERALD D. WICKS, MERLIN JOSEPH WAGNER, SR., KENNETH DEE McQUIRE, W. W. WILLIAMS, JR., RUSSELL H. HUBBARD, JR., RAYMOND E. KRAFT, SR., MACK A. BUCKLEY, JAMES FRANK WILLIAMS, JOSEPH D. McQUEEN, EVELYN BARADELL, ISOM CLIFTON, JOHN PAUL McDONALD, CLIFTON EDWARD RATCLIFF, JR., LARRY V. BRELAND, RODNEY GEORGE CARTER, SUSAN CARTER, CHARLES HARTSFIELD, JR., LETA HARTSFIELD, NANCY JOYCE WICKS, GRACE L. HUDGINS, HERMAN N. HUDGINS, DOROTHY DELL MARTIN, JAMES O. SHEPARD, PAMELLA LYNN WAGNER, GENE WHITEHURST, JEANNIE WHITEHURST, ELSIE J. McQUIRE, SYBIL ADKINS, CURTIS ANDREW ARCHEY, MARTHA ARCHEY, ROBERT E. BARTON, NELSA BRANNON, MARY FIRTH, PATRICIA L. GOODWIN, RONALD D. GOODWIN, KARIA RENEE HAMRAC, RONALD EDWARD HAMRAC, ELIZABETH WILLIAMS, ETHEL WOZENCRAFT, JOHN WOZENCRAFT, LUCY WOZENCRAFT, PAMELA HUBBARD, FRANCES McQUEEN, J. D. McQUEEN, SR., LORI ATES, STEVE ATES, OREE BAUCUM, JR., WANDA BAUCUM, HELEN BEXLEY, BOBBIE JEAN BOLTON, LUCY BOLTON, EZRA B. BOND*

*v.*

*LEAF RIVER FOREST PRODUCTS, INC., LEAF RIVER CORPORATION, GREAT NORTHERN NEKOOSA CORPORATION, GEORGIA-PACIFIC CORPORATION, WARREN RICHARDSON, AND ACKER SMITH*

DATE OF JUDGMENT:        07/29/1996

TRIAL JUDGE:             HON. JAMES W. BACKSTROM

COURT FROM WHICH         JACKSON COUNTY CIRCUIT COURT
APPEALED:

ATTORNEYS FOR            JOHN M. DEAKLE
APPELLANTS:

                         WILLIAM R. COUCH

                         PATRICK W. PENDLEY

ATTORNEYS FOR            JAMES H. HEIDELBERG
APPELLEES:

                         JOE SAM OWEN

                         W. WAYNE DRINKWATER, JR.

                         JOE R. COLINGO

                         MARGARET STEWART OERTLING

NATURE OF THE CASE:      CIVIL - TORTS - OTHER THAN PERSONAL
                         INJURY AND PROPERTY DAMAGE

DISPOSITION:             AFFIRMED - 8/12/1999

MOTION FOR               3/18/99
REHEARING FILED:

MANDATE ISSUED:
August 19, 1999

CONSOLIDATED WITH

NO. 96-CA-00978-SCT

*CASSANDRA DILLON, KENNETH R.*

*MILLER, J. CLARK DAUGHDRILL,*

*THURMAN H. BRISTER, T. A. WILDER, JR.,*

*JIMMIE P. JAMES, JIMMY A. ELLZEY,*

*SHIRLEY L. ELLZEY, CLEON A. HARTLEY,*

*EVELYN HARTLEY, DAVID W. SIMMONS, LOURDES DELCARMEN SIMMONS, PATRICIA A. BRISTER, CASSIE E. DAUGHDRILL, WILLIAM MARION DAUGHDRILL, BENJAMIN A. EUBANKS, BRUCE L. EUBANKS, BUFORD L. EUBANKS, CHARLES E. EUBANKS, DAWN EUBANKS, HORRACE R. EUBANKS, MARY E. EUBANKS, OWEN M. EUBANKS, OWEN EUBANKS, SHARON K. EUBANKS, SHERYL P. EUBANKS, TERI C. EUBANKS, LEE ANN FARRIOR, CATHERINE S. GREEN, SAMUEL C. GREEN, JEAN WEBB LOTT, JERRY W. LOTT, KENNETH R. MILLER, MARLENE MILLER, JERRY MORRISON, PEGGY MORRISON, CHESTINE O'NEAL, JERALD O'NEAL, HOLLIS L. WELFORD, ROSIE M. WELFORD, T. A. WILDER, JOYCE JAMES, MAXINE SYLVESTER AND WILMER SYLVESTER*

*v.*

*LEAF RIVER FOREST PRODUCTS, INC., LEAF RIVER CORPORATION, GREAT NORTHERN NEKOOSA CORPORATION, GEORGIA-PACIFIC*

*CORPORATION, WARREN RICHARDSON, AND*

*ACKER SMITH*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/1996 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN M. DEAKLE |
| | WILLIAM R. COUCH |
| | PATRICK W. PENDLEY |
| ATTORNEYS FOR APPELLEES: | JAMES H. HEIDELBERG |
| | JOE SAM OWEN |
| | W. WAYNE DRINKWATER, JR. |
| | JOE R. COLINGO |
| | MARGARET STEWART OERTLING |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 8/12/1999 |
| MOTION FOR REHEARING FILED: | 3/18/99 |
| MANDATE ISSUED: | |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This matter is before this Court on the Appellees' motion for rehearing. The motion for rehearing is granted. The original opinion is withdrawn and this opinion is substituted therefor.

¶2. We have for review a motion for summary judgment granted against property owners along the Leaf River claiming damages resulting from chemical wastes deposited into the Leaf River during the operations of a pulp mill. We find that the Appellants failed to produce legally sufficient evidence in support of their

claims of emotional distress arising out of a fear of future disease and their claims of trespass and nuisance for exposure to dioxin and their claims of private and public nuisance resulting from discoloration of the river and sandbars. Accordingly, we affirm.

## I.

¶3. In September 1984, Leaf River Forest Products, Inc. ("LRFP") began operating a pulp mill along the Leaf River near New Augusta, Mississippi. The mill processes timber into market pulp, which is then sold globally to be used in the production of paper and paper related products. As part of the manufacturing process the pulp is bleached by being exposed to chlorine in the presence of heat. A byproduct of the bleaching process is a chemical called 2,3,7,8-tetrachlorodibenzo-*p*-dioxin, commonly known as dioxin. Pursuant to a permit issued by the Mississippi Department of Environmental Quality the, mill discharges treated waste water, known as "effluent", into the Leaf River.

¶4. Starting in 1990, John Deakle, Esq. and associated counsel filed thirty-six (36) separate complaints, on behalf of approximately 5,500 plaintiffs (the "Deakle Group"), against the Leaf River Defendants. The various Complaints claimed that the mill's effluent contained large quantities of dioxin and other chemicals and deposited on properties belonging to members of the Deakle Group and resulted in the discoloration of the river. The Deakle Group further alleged that fish downstream from the mill ingested dioxin and were subsequently consumed by some members of the Deakle Group, thereby exposing them to dioxin. The Deakle Group sought actual and punitive damages on theories which included negligent or intentional infliction of emotional distress arising from a fear of future disease; assault and battery; and interference with the recreational use and aesthetic enjoyment of the Leaf and Pascagoula Rivers by a public and a private nuisance.

¶5. On July 5, 1996, the Leaf River Defendants filed a motion for summary judgment claiming that the Deakle Group lacked scientific evidence to support the assertions that they or their properties had been exposed to dioxins discharged by the mill, as required by *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648 (Miss. 1995). In support of the motion for summary judgment the Leaf River Defendants relied on, among other things, the affidavit of Professor Christoffer Rappe, a Swedish Professor involved in researching dioxin formation. Professor Rappe's affidavit stated that his research of samples collected in and around the Leaf River areas showed to a reasonable degree of scientific certainty, that although the samples contained detectable levels of dioxin, the Leaf River mill was not the source of the dioxins found in the area. Professor Rappe explained that there are many sources of dioxins, some are natural, such as forest fires and natural decomposition, while other sources are man-made, such as waste incineration, sewage sludge, production and use of chlorine, and some industrial facilities. Human exposure to dioxin is usually attributable to the consumption of such foods as milk, meat, cheese, eggs and seafood. Professor Rappe further stated that dioxins can be detected accurately and with relative ease, in soil and humans through the scientific evaluation of soil samples and blood tests.

¶6. The Deakle Group filed, on July 11, 1996, a motion to stay the proceedings or alternatively to extend the time in which to respond to the summary judgment motion. The Deakle Group argued that the undecided appeal of *Leaf River Forest Prods., Inc., v. Simmons*, 697 So. 2d 1083 (Miss. 1996), involved unresolved legal issues relevant to the present action. On July 19, 1996, after a hearing, the trial court denied the Deakle Group's motions to stay the proceeding or for an extension. The Deakle Group sought reconsideration claiming that under the scheduling order for the case the Leaf River Defendants were

not yet required to designate any experts and that the Deakle Group had not had an opportunity to conduct discovery regarding the allegations contained in the motion for summary judgment, especially regarding the assertions made by Professor Rappe in his affidavit. The motion for reconsideration was also denied.

¶7. On July 25, 1996, the Deakle Group responded to the motion for summary judgment, arguing that circumstantial evidence of exposure to dioxin, as opposed to direct scientific evidence, was sufficient to withstand a motion for summary judgment. In support of their objection to granting the motion for summary judgment the Deakle Group referenced and submitted during the hearing a number of exhibits which had been relied on in the *Ferguson* trial. They offered the affidavit of John Crutcher ("Crutcher"), a paralegal in the Deakle law firm, describing various photographs and a video tape which had been submitted in *Ferguson*. The photographs and video tape allegedly depicted color changes in the river and stains on sandbars, at or near the properties belonging to the members of the Deakle Group. The Deakle Group also argued that they were in close proximity to the mill, unlike the *Ferguson* plaintiffs who were 125 miles downstream from the mill.

¶8. The Deakle Group further alleged that one of the members of the Group had contracted Hodgkin's disease and that a pediatric hematologist had opined that exposure to dioxin was a significant contributing factor. This member's appeal from the grant of the summary judgment motion is beginning considered separately by this Court. However, the Deakle Group admits that the remaining members have no proof that they are suffering from a dioxin-caused illness or that dioxin has been detected in their blood.

¶9. After the hearing on the motion for summary judgment the trial court entered a Judgment, on July 29, 1996, granting the Leaf River Defendants' motion, on the grounds that the Deakle Group lacked legally sufficient evidence of exposure or causation. The trial court found that the claims for emotional distress resulting from a fear of future disease were not compensable under Mississippi law. The trial court further found that, even if Mississippi recognized such a claim, the Deakle Group failed to offer proof that they suffered from a present illness resulting from exposure to dioxin or other chemical, that they had been exposed to any substance discharged by the Leaf River mill, and failed to offer medical or scientific evidence of a likelihood of developing future illness resulting from exposure to dioxin, as required by *Ferguson*. The trial court also found that the Deakle Group had offered no proof that their properties were physically invaded by chemicals or that the Leaf River mill was the source of any such chemicals. It was also held that in claiming a public nuisance for the changes to the Rivers the Deakle Group had failed to offer proof that they suffered harm different from that suffered by the general public or that the Leaf River Mill caused the changes to the Rivers. Having granted the Leaf River Defendants' summary judgment on the Deakle Group's actual damage claims, the trial court also dismissed the claims for punitive damages. Aggrieved, 533 of the Deakle Group plaintiffs filed this appeal from the judgment of the trial court.

## II.

## A.

¶10. The Deakle Group raises the issue of whether the trial court erred in denying the motion to stay the proceedings or continue the hearing on the motion for summary judgment. This action is governed by the holdings in ***Leaf River Forest Prods., Inc. v. Ferguson***, 662 So. 2d 648 (Miss. 1995), ***Leaf River Forest Prods., Inc. v. Simmons***, 697 So. 2d 1083 (Miss. 1996), ***Beech v. Leaf River Forest Prods., Inc.***, 691 So. 2d 446 (Miss. 1997), and ***Anglado v. Leaf River Forest Prods., Inc.***, 716 So. 2d 543 (Miss. 1998). At the time the Leaf River Defendants filed their motion for summary judgment, *Simmons*

was pending before this Court on appeal. The Deakle Group moved the trial court to stay the proceedings until a decision was rendered on the *Simmons* appeal or continue the hearing on the motion for summary judgment to allow the Deakle Group time to respond. The trial court denied this motion.

¶11. A decision to grant or deny a motion to continue or a motion to stay the proceedings pending the outcome of a separate action is within the sound discretion of the trial court judge and will not be disturbed absent evidence of abuse. *See* **Brown v. Brown**, 493 So. 2d 961, 963-64 (Miss. 1986). In considering a motion to stay the proceedings pending the outcome of another action, the trial court should look at whether the same parties are involved, whether the same issues are involved and whether the outcome of the pending action will effectively dispose of the need for trial of the action at bar.1 Am. Jur. 2d *Actions* § 77 (1994).

¶12*. Simmons* essentially involved the same defendants, the same facts and the same issues raised by the parties in the current action. *Simmons*, 697 So. 2d at 1085. However, during the time that *Simmons* was pending on appeal **Ferguson** had been decided by this Court and also involved virtually the same defendants, the same facts and the same issues. The *Simmons* Court held:

> This Court's holding in the present case is dictated largely by this Court's decision in **Leaf River Forest Products, Inc. v. Ferguson**, 662 So. 2d 648 (Miss. 1995), in which case this Court reversed a jury verdict in favor of the plaintiff Ferguson and rendered judgment in favor of defendants. **Ferguson** involved two of the exact same defendants being sued for the alleged release of dioxin into the very same Leaf River by a plaintiff similarly situated to the plaintiff in the present case.

*Id.* at 1085. The case at bar is essentially the same as both **Ferguson** and *Simmons*. And the *Simmons* case did not lend more, than the holding in **Ferguson**, to the disposition of this action. Therefore, the trial court did not abuse its discretion in denying the Deakle Group's motion to stay the proceedings.

¶13. The Deakle Group claimed in their motion to reconsider, that they were prejudiced in their ability to respond to the motion for summary judgment. The basis for this assertion was that the motion for summary judgment came at a time when discovery was in the "embryonic stages" and the time in which the Leaf River Defendants were to designate their expert had not arrived under the parties's Scheduling Order. The Deakle Group also claimed that they would not be able to depose Professor Rappe as to the assertions made in his affidavit prior to the date of the hearing on the motion for summary judgment. In determining whether a trial court should consider a motion for summary judgment prior to the completion of discovery, this Court has held:

> Rule 56(f) provides that when a party is unable to produce affidavits to oppose a motion for summary judgment, that party may instead file a motion or affidavit with the court explaining his inability to oppose the motion for summary judgment. In such cases, the court, at its discretion, may, if it finds the reasons offered to be sufficient, postpone consideration of the motion for summary judgment and order among other things that discovery be completed. *See* 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2728 at 191. The rule itself contemplates that the completion of discovery

is, in some instances, desirable before the court can determine whether there is a genuine issue of material fact. *See **Smith v. H.C. Bailey Companies***, 477 So. 2d 224 (Miss.1985). This is especially true where the party seeking to invoke the protections of Rule 56(f) claims the necessary information rests within the possession of the party seeking summary judgment. However, the party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." ***United States v. Little Al***, 712 F.2d 133, 135 (5th Cir. 1983), [citing Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir. 1980)]. The party opposing the motion for summary judgment may not rely on vague assertions that discovery will produce needed, but unspecified, facts particularly where there was ample time and opportunity for discovery. ***Securities & Exchange Commission v. Spence & Green Chemical Co.***, 612 F.2d 896, 901 (5th Cir. 1980); *see also*, ***Aviation Specialties, Inc. v. United Technologies Corp.***, 568 F.2d 1186, 1189 (5th Cir. 1978) [failure to conduct discovery where case was on docket for six months bars application of 56(f)]. This is so because Rule 56(f) is not designed to protect the litigants who are lazy or dilatory and normally the party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the exclusive possession of the other party. 10A Wright, Miller & Kane, Federal Practice & Procedure, § 2741 at 549. Finally, the determination as to the adequacies of the non-movant's Rule 56(f) affidavits and the decision to grant a continuance or order further discovery rests within the sound discretion of the trial judge and will not be reversed unless his decision can be characterized as an abuse of discretion. ***Fontenot v. Upjohn Co.***, 780 F.2d 1190, 1193 (5th Cir. 1986).

***Marx v. Truck Renting & Leasing Ass'n, Inc.***, 520 So. 2d 1333, 1343-44 (Miss. 1987).

¶14. Here the Deakle Group does not claim that information regarding the formation and presence of dioxin is in the sole possession of the Leaf River Group. The Deakle Group had ample opportunity to obtain expert affidavits of their own regarding the presence of dioxin in their bodies or on their properties and regarding whether the Leaf River mill was the source of dioxin found in the area. *See **Holifield v. Pitts Swabbing Co.***, 533 So. 2d 1112, 1118 (Miss. 1988). The earliest of the Deakle Group actions was filed in 1990, six years before the Leaf River Defendants filed its motion for summary judgment on July 5, 1996. There is no indication in the record that during that six years the Deakle Group propounded any interrogatories, requests for production, or requests for admission upon the Leaf River Defendants. *See **Marx***, 520 So. 2d at 1344. On the other hand, the Leaf River Defendants fully utilized discovery mechanisms by propounding interrogatories and requests for admission, which the Deakle Group answered. There is also no evidence in the record that the Deakle Group even attempted to depose Professor Rappe prior to the hearing date. Additionally, the facts involved in this action were not new to the Deakle Group. Nearly, identical facts had been litigated in ***Ferguson*** and ***Simmons***, against the Leaf River Defendants by the same attorneys. Therefore, the record does not support a finding that the trial court

abused its discretion by denying the Deakle Group's motion to continue.

## B.

¶15. On appeal this Court reviews *de novo* a trial court's decision to grant a motion for summary judgment, which should only be granted

> "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56. A fact is material if it "tends to resolve any of the issues, properly raised by the parties." *Webb v. Jackson*, 583 So. 2d 946, 949 (Miss. 1991) (citing *Mink v. Andrew Jackson Casualty Ins. Co.*, 537 So. 2d 431, 433 (Miss. 1988) (quoting *Mississippi Road Supply v. Zurich-American Insurance Co.*, 501 So. 2d 412, 414 (Miss. 1987))). The evidence must be viewed in the light most favorable to the non-moving party. If, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted in his favor. Otherwise, the motion should be denied. *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983).
>
> *Morgan v. City of Ruleville*, 627 So. 2d 275, 277 (Miss. 1993).
>
> Where doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of denying the motion and permitting a full trial on the merits. Where the record is incomplete regarding any material fact, the summary judgment motion should generally be denied. *American Legion Ladnier Post 42, Inc. v. City of Ocean Springs*, 562 So. 2d 103, 106 (Miss. 1990).

*Ellis v. Powe*, 645 So. 2d 947, 951 (Miss. 1994). A non-moving party to a motion for summary judgment is not entitled to rely on general allegations or denials, but must come forth with "significant probative evidence demonstrating the existence of the triable issue of fact." *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 364 (Miss. 1983). "[I]t is incumbent upon the plaintiff opposing the motion for summary judgment to set forth, by affidavit or some other form of sworn statement, specific facts which give rise to genuine issues that should be submitted to a jury." *Anglado v. Leaf River Forest Prods., Inc.*, 716 So. 2d 543 (Miss. 1998). The trial court's function on a Rule 56 motion for summary judgment is not to resolve disputed factual issues, but rather to determine whether issues of fact exist to be tried. Miss. R. Civ. P. 56 cmt.

### 1. Emotional Distress Claim

¶16. The Leaf River Defendants sought summary judgment on the Deakle Group's claim that they were entitled to recover for emotional distress arising out of a fear of future disease. This same issue was addressed in *Ferguson* and *Beech*. In both cases this Court held that the fear of future disease claim is neither recognized nor compensable under Mississippi law. *Ferguson*, 662 So. 2d at 658; *Beech*, 691 So. 2d at 451. The Leaf River Defendants argued, in their motion for summary judgment that, just as in the *Ferguson* case, the Deakle Group has failed to offer proof of exposure

and medical evidence of the potential for future illness. The Leaf River Defendants offered the affidavit of Professor Rappe as undisputed evidence that Leaf River Mill was not the source of any dioxin detected in the area. Professor Rappe also stated that dioxin can be detected accurately and easily in humans through the scientific evaluation of blood tests.

¶17. The Deakle Group, on the other hand, fails to offer significantly probative evidence which demonstrates the existence of triable issues of fact. *Brown*, 444 So. 2d at 364. The only evidence that they offer of exposure to dioxin is that some members of the Deakle Group consumed fish living in the river, which may have ingested dioxin. The Deakle Group admits that none of its members have had blood tests to determine if they have been exposed to dioxin. There is only one member of the Group claiming physical illness resulting from exposure to dioxin. However, that member's appeal from the trial court's judgment is being considered separately by this Court. In any event, physical illness from which one member suffers can not be attributed to the entire Deakle Group. Therefore, the trial court did not err in granting the Leaf River Defendants' motion for summary judgment on the claim for emotional distress.

## 2. Trespass, Private Nuisance and Public Nuisance Claims

¶18. The Leaf River Defendants also sought summary judgment on the Deakle Group's property damage claims resulting from alleged trespass, private nuisance and public nuisance. Where a claimant alleges trespass as a result of chemical discharges, the burden lies with the claimant to prove an actual physical invasion of the subject property. *Simmons*, 697 So. 2d at 1085-86. The Leaf River Defendants claimed in their motion for summary judgment that the Deakle Group lacked legally sufficient proof of exposure to dioxins and that they failed to prove that any dioxins contained in the river were attributable to the Leaf River Mill. In response to the motion for summary judgment the Deakle Group offered photographs and video tapes depicting color changes in the water, and stains on sandbars, allegedly resulting from the discharged effluent. This same evidence was rejected in *Simmons*, where this Court held that:

> Simmons' proof was inadequate to support a jury verdict in his favor for nuisance. . . . This proof offered by Simmons closely parallels that offered by the plaintiff in *Ferguson*. Simmons, like Ferguson, presented no evidence of dioxin tests conducted on his property or on his person, and this Court in Ferguson held the proof absent such evidence to be insufficient to support a recovery under either a public or private nuisance theory. *Id.* at 665.

> . . .

With regard to the trespass cause of action, the deficiency in Simmons' proof is even clearer than with regard to the nuisance action, given that trespass requires an actual physical invasion of the plaintiff's property. *Blue v. Charles F. Hayes & Associates, Inc.*, 215 So. 2d 426 (Miss. 1968). This Court did not have the opportunity to address the issue of trespass in *Ferguson*, given that the jury in said case had held the defendants to not be liable for trespass. It is clear, however, this Court's reluctance to allow recovery for nuisance absent a showing that dioxin was present on Ferguson's property applies even more to a trespass cause of action than to a nuisance cause of action which requires no actual physical invasion.

*Simmons*, 697 So. 2d at 1085.

¶19. The Deakle Group argues that it is an incorrect rule of law that they must come forward with scientific evidence of exposure, in the form of blood tests or soil tests; circumstantial evidence is sufficient. In support of this argument the Deakle Group cites *Slaughter v. Southern Talc Co.*, 949 F.2d 167 (5th Cir. 1991). It was held in *Slaughter*, as follows:

> The most frequently used test for causation in asbestos cases is the "frequency-regularity-proximity" test announced in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986). *Lohrmann* held that a motion for summary judgment cannot be defeated merely by alleging work at a shipyard in which defendants' asbestos products had somewhere been present. Rather, there must be proof of frequent and regular work in an area of the shipyard in proximity to some specific item of defendants' asbestos-containing product. The *Lohrmann* court found that exposure to an asbestos-filled pipe cover on ten to fifteen occasions did not satisfy this test.

> We agree that *Lohrmann* recites the appropriate test for a minimum showing of producing cause in asbestos cases. A plaintiff must prove that, more probably than not, he actually breathed asbestos fibers originating in defendants' products. This proof can be made by showing that plaintiff frequently and regularly worked in proximity to defendants' products such that it is likely that plaintiffs inhaled defendants' asbestos fibers.

*Id.* at 171. The *Slaughter* court held that proximity could be proved by circumstantial evidence. *Id.* at 171-72. *Slaughter*, although persuasive, is not binding on this Court.

¶20. Even if this Court were to adopt the holding in *Slaughter*, the Deakle Group misconstrues its holdings. The "frequency-regularity-proximity" test is made specifically applicable to cases involving asbestos-related injuries. Also the rule providing for the use of circumstantial evidence to prove proximity does not decrease the claimant's burden to prove triable issues of fact on a motion for summary judgment. The *Slaughter* court also looked first to scientific evidence to determine

whether the products produced by the defendants, and to which the claimants had proximity, actually contained asbestos. *Id.* at 170. Here the Leaf River Defendants offered uncontradicted evidence, through the affidavit of Professor Rappe, that the mill was not the source of any dioxin found in the area, while the Deakle Group failed to offer any scientific evidence that dioxin was on their properties. Therefore, in so far as the Deakle Group claims that it is entitled to recover under the theories of trespass, private and public nuisance for the presence of the chemical dioxin in the Rivers or on their properties, the trial court did not err in granting the Leaf River Defendants summary judgment on these issues.

¶21. The Deakle Group does not merely claim that they are entitled to recover for the alleged discharge of dioxin, but that they are entitled to recover for a nuisance because the mill's effluent caused discoloration to the river and deposits on the sandbars. The trial court relying on *Ferguson* held that the Deakle Group must present proof of the presence of dioxin in order to recover for nuisance. This is not what *Ferguson* held.

¶22. Instead, this Court recognized in *Ferguson* that a plaintiff may recover under a claim of private nuisance for discoloration of the water, river banks, and sand bars.

> [T]he "riparian proprietor" [has] a right to use the water in question "in its natural purity, or in the condition in which he has been in the habit of using it," and that:
>
> a riparian owner sustaining substantial injuries by reason of such an invasion of his rights may maintain an action without regard to the motive which prompts the invasion, and the pollution of a stream to the injury of a lower proprietor will not be justified by the importance of the business of the upper proprietor to either the public or the wrongdoer, or by the fact that the latter is conducting such business with care and in the only known practicable mode.

*Ferguson*, 662 So. 2d at 664 (quoting *Southland Co. v. Aaron*, 221 Miss. 59, 72, 72 So. 2d 161, 165 (1954) (quoting 56 Am. Jur. *Waters* § 405 (1947))). *Ferguson* held that the private nuisance claim failed, not because the plaintiffs did not offer scientific evidence of dioxin on their properties, but because the plaintiffs failed to prove that the discoloration of the river and the sandbars affected their properties. *Ferguson*, 662 So. 2d at 664.

¶23. Here the Deakle Group offered pictures depicting the discoloration to the river and black deposits on sandbars, along with the affidavit of the paralegal who took the pictures. The Deakle Group also argued that they were in close proximity to the mill, unlike the *Ferguson* plaintiffs who were 125 miles downstream from the mill. The Deakle Group did not, however, offer legally sufficient proof that the alleged discoloration effected the River adjacent to property belonging to any of the members of the Deakle Group, or that there were black deposits on sandbars on or near

property belonging to members of the Deakle Group.[1] Therefore, just as in *Ferguson*, the Deakle Group failed to prove that the discoloration of the river and the sandbars affected their properties.

¶24. As to the claim for a public nuisance the trial court held that the Deakle Group had failed to offer proof that they suffered any harm different from that of the general public. A complainant seeking to recover for a public nuisance "must have sustained harm different in kind, rather than in degree, than that suffered by the public at large." *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 861 (Miss. 1988). Interference with the condition of land is sufficient to constitute harm different than that suffered by the public at large. *Id.* However, as discussed *supra*, the Deakle Group has failed to present legally sufficient evidence that their property has been affected by any discoloration. Thus, there was not sufficient evidence of a individualized harm, so as to forestall the dismissal of the public nuisance claim on a motion for summary judgment.

### 3. Punitive Damages Claim

¶25. The Deakle Group also claims that the trial court erred in granting the Leaf River Defendants' motion for summary judgment on the claim for punitive damages. This Court has held that "[p]unitive damages are not recoverable absent an award of actual damages." *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 820 (Miss. 1996). Thus, the trial court correctly held that, because the Deakle Group had failed in its proof on the claims for actual damages, the punitive damages claim could not stand.

### III.

¶26. For the foregoing reasons, the trial court's judgment is affirmed.

¶27. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**

1. During the summary judgment hearing, counsel for the Deakle Group referred to affidavits from members of the Deakle Group describing the effects of the alleged discoloration on the river and their enjoyment thereof. These affidavits are not included in the record; and efforts by this Court to supplement the record have proven fruitless.