# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01453-SCT

*MARK ROBERTS*

*v.*

*BOOTS SMITH OILFIELD SERVICES, LLC, BILL
JENKINS AND JASON SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2014 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| TRIAL COURT ATTORNEYS: | SAMUEL STEVEN McHARD |
| | PAUL MANION ANDERSON |
| | BRETT WOODS ROBINSON |
| | WILLIAM HARRY ECKHERT |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PAUL MANION ANDERSON |
| | SAMUEL STEVEN McHARD |
| ATTORNEYS FOR APPELLEES: | WILLIAM HARRY ECKERT |
| | J. COLLINS WOHNER, JR. |
| | BRETT WOODS ROBINSON |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 09/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2015-CA-00143-SCT

*MARK ROBERTS*

*v.*

*WARRIOR ENERGY SERVICES CORPORATION*

DATE OF JUDGMENT:                      12/03/2014
TRIAL JUDGE:                           HON. BILLY JOE LANDRUM
TRIAL COURT ATTORNEYS:                 SAMUEL STEVEN McHARD
                                       MEADE W. MITCHELL
                                       ROBERT M. FREY
                                       JOHN HOUSTON DOLLARHIDE
                                       ROBERT D. GHOLSON
COURT FROM WHICH APPEALED:             JONES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:               PAUL MANION ANDERSON
                                       SAMUEL STEVEN McHARD
ATTORNEYS FOR APPELLEE:                ROBERT M. FREY
                                       ROBERT D. GHOLSON
                                       MEADE W. MITCHELL
NATURE OF THE CASE:                    CIVIL - TORTS-OTHER THAN PERSONAL
                                       INJURY & PROPERTY DAMAGE
DISPOSITION:                           REVERSED AND REMANDED - 09/01/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WALLER, C.J., KITCHENS AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Mark Roberts filed various claims against multiple defendants, all of which were dismissed on summary judgment. When the defendants filed their motions for summary-judgment, discovery was not yet complete. Roberts had been deposed. But the depositions of the defendants, as well as a key factual witness, were still pending. So Roberts responded to the summary judgment motions with his own motion—a motion to defer under Mississippi Rule of Civil Procedure 56(f).

¶2.     Because completing discovery is often preferable and sometimes necessary to rule on a summary-judgment motion, Rule 56(f) permits a trial court to continue its ruling until discovery is complete. "This is especially true where the party seeking to invoke the

2

protections of Rule 56(f) claims the necessary information rests within the possession of the party seeking summary judgment."[1]  Here, Roberts asserted in his Rule 56(f) motion that, to oppose the motions for summary judgment, he needed specific information in the defendants' possession—namely, the defendants' sworn deposition testimony about their involvement in terminating Roberts's employment.  And because those depositions had already been scheduled to take place, we find the trial court's denial of Roberts' Rule 56(f) motions was an abuse of discretion.

¶3.     Consequently, we reverse the judgments in favor of the defendants as prematurely granted.  We remand this case to the trial court so discovery may be completed.

### Background Facts and Procedural History

### I.      Roberts's Claims

¶4.     Roberts began working for Warrior Energy Services Corporation in February 2012. He was an at-will, full-time salesman for the company.  But in late March 2013, Warrior let him go.  According to Roberts, his termination was the result of a conspiracy by Warrior; Bill Jenkins, a Warrior officer; Jason Smith, Jenkins's close friend; and Boots Smith Oilfield Services, LLC.  Roberts believes these four conspired to retaliate against Roberts for doing two things—(1) reporting illegal activity and (2) buying the assets of a pipeline company to compete with Boots Smith.

#### A.      Reporting Illegal Activity

---

[1] ***Prescott v. Leaf River Forest Prods., Inc.***, 740 So. 2d 301, 308 (Miss. 1999).

¶5.  Just weeks before his termination, Roberts conveyed to his superior at Warrior, vice-president Vernon Tew, his suspicions about a company called Better-Half Industries, LLC (BHI).  Roberts became curious when he kept seeing BHI's name on the "laydown" machines Warrior was using.  He went to the Secretary of State's website and learned BHI had been set up in the names of Jenkins's wife and the wife of another Warrior employee, Dale Hilton.  Roberts told Tew he suspected Jenkins and Hilton were misappropriating Warrior resources to benefit BHI.

¶6.  Given the timing of his termination, Roberts insists his report to Tew about BHI factored into his losing his job.  And because even at-will employees cannot be fired in retaliation for reporting illegal activities of their employers, Roberts claims his termination was wrongful.

### B.  Purchasing Pipeline-Company Assets

¶7.  Around the same time he told Tew about BHI, Roberts also told Jenkins about his plan to start a small pipeline construction and maintenance company.  Months earlier, Roberts had purchased assets from Stringer Construction LCC, which was going out of business.  Jenkins informed Roberts that his good friend, Smith, had a company (Boots Smith) that performed the same type of work as Stringer had, so Roberts would be competing for the same business.

¶8.  Smith then met with Roberts to discuss the asset purchase.  According to Roberts's deposition, that conversation ended with Smith telling Roberts the assets were his to do whatever he wanted with them.  And he should let him (Smith) know if he needed any help.  But Roberts testified he later learned through the man who had brokered the asset purchase,

4

John Parker, that both Smith and Jenkins were very angry about Roberts's plan. Roberts said he had even heard through Parker that Smith called Hardy to complain about Roberts's purchase of Stringer's assets and "otherwise malign[] Roberts."

¶9.    Roberts claims Jenkins's and Smith's willful interference with Roberts's employment with Warrior was malicious and tortious. He also claims Jenkins and Smith tried to interfere with his new pipeline business.

### C.    Complaint

¶10.   Three months after he was terminated, Roberts filed a five-count complaint in June 2013. In this complaint, he brought a wrongful termination claim against Warrior. And against Jenkins, Smith, and Boots Smith, he brought claims for tortious interference with his employment contract and tortious interference with his business relations. He further brought claims of civil conspiracy and intentional infliction of emotional distress against all four defendants.

## II.    Discovery

¶11.   Vernon Tew was the first to be deposed, in April 2014. Roberts's deposition followed in June 2014. But none of the defendants were deposed.

¶12.   Soon after the defendants had filed their answers, Roberts had filed notices of his intent to depose Jenkins and Warrior, as well as non-parties who did business with BHI.[2] After multiple postponements, in July 2014, Roberts filed a motion to compel Warrior's 30(b)(6) deposition. According to Roberts, Warrior's deposition was finally set for mid-

---

[2] These non-parties filed successful motions to quash.

October 2014. And the record reflects Jenkins's deposition was set for October 1, 2014. Parker was to be deposed too, the day before Jenkins, on September 30, 2014.

### III.    Motions for Summary Judgment

¶13.    These scheduled depositions never occurred. On August 26, 2014, Smith and Boots Smith moved for summary judgment. Days later, Jenkins also filed a summary-judgment motion.

¶14.    Roberts responded with a Rule 56(f) motion to defer, deny, or continue a summary judgment ruling until all discovery had been complete. *See* M.R.C.P. 56(f). Roberts specifically cited the need to take the depositions of Parker, Jenkins, and Warrior, all scheduled for the following month.[3]

¶15.    Jenkins conceded discovery was not complete. But he argued summary judgment was still appropriate because additional discovery would not help substantiate Roberts's unsupported claims. Regarding his retaliation theory, Jenkins argued Roberts's deposition, along with Tew's, was enough to show Roberts had zero evidence his knowledge of Jenkins's involvement with BHI had anything to do with his termination. And concerning his tortious-interference theory, Jenkins pointed to Roberts's testimony that he (Roberts) had no evidence that Jenkins or Smith interfered with his pipeline business or engaged in a conspiracy. In his deposition, when asked specifically how Jenkins and Smith had interfered with Roberts's pipeline business, Roberts admitted he had no specific evidence to support

---

[3] Roberts said he also needed to schedule depositions with Hilton and Hilton's wife, as well as subpoena Jenkins's, Smith's, and Warrior's phone records.

his allegations that he had been frozen out of the market or otherwise damaged.  Nor did he have any specific facts to support his conspiracy claim.

¶16.    But in his response to the motion for summary judgment, Roberts attached Parker's affidavit.  Parker averred he was the one who negotiated Roberts's purchase of Stringer Construction's assets.  According to Parker, he first presented Jenkins with the opportunity to buy Stringer's assets.  But Jenkins did not seem interested.  So Parker contacted Roberts.  Parker met with Roberts and Stringer's owner, who sold Roberts the assets in January 2013.

¶17.    After the purchase, Parker met with Roberts and Jenkins.  Jenkins brought up the fact his friend, Smith, owned Boots Smith.  Because Boots Smith performed similar work as Stringer, Roberts's starting a new company with Stringer's assets could affect Boots Smith's business.  According to Parker, Roberts then offered to resell the assets.  But Jenkins replied, "Don't worry, 'Marco,' no one is going to get fired.  You have my blessing and I'll get back with you."

¶18.    Soon after, Parker received a phone call from Smith, who demanded to meet with Parker.  At the meeting, Smith "was visibly upset and expressed anger that [Parker] had mentioned the [Stringer] asset purchase deal with [Roberts] and not . . . Boots Smith."  Parker told Smith he had mentioned the deal to Jenkins first, but Smith continued to be very angry.  Later, Smith informed Parker "that he had contacted Sam Hardy . . . regarding [Roberts's] employment with Warrior and [Roberts's] purchase of the [Stringer] assets."

¶19.    Roberts had filed Parker's affidavit Friday before the Monday summary-judgment hearing.  The trial court erroneously dismissed Parker's affidavit as being filed too late.  *See*

M.R.C.P. 56(c) (permitting the nonmoving party to submit opposing affidavits "prior to the day of the hearing"). Consequently, the trial court found there were no genuine issues of material fact and that all three defendants were entitled to judgments as a matter of law on all claims against them. At Jenkins's and Smith's request, the trial court certified its judgment dismissing three of the four defendants as final. *See* M.R.C.P. 54(b). This final order was entered September 16, 2014.

¶20. On September 29, 2014, Warrior, the only remaining defendant, filed for summary judgment too. The next day the dismissed Jenkins filed a motion to stay both Parker's deposition, which Jenkins had noticed, and his own deposition, which Roberts had noticed. According to Jenkins, as a dismissed party, he should not have to incur any further litigation expenses. Neither Parker's, Jenkins's, nor Warrior's deposition was ever taken.

¶21. Roberts's responded to Warrior's motion for summary judgment with another Rule 56(f) motion to defer, deny, or continue. The trial court denied Roberts's request for a continuance. On December 4, 2014, it entered summary judgment in favor of Warrior on all remaining claims.

¶22. Roberts timely appealed both orders granting summary judgment. The two appeals have been consolidated.

## Discussion

¶23. On appeal, Roberts first argues the trial court abused its discretion when it denied both Rule 56(f) motions to defer. Second, he argues, even with limited discovery, Roberts established genuine issues of material fact, making summary judgment improper. Because

we find it was an abuse of discretion to deny Roberts's Rule 56(f) motions—especially, in light of pending depositions—we address his first issue only.

## I.      Rule 56(f)

¶24.    Rule 56(b) permits a defendant to move for summary judgment "at any time[.]" M.R.C.P. 56(b).  "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).

¶25.    But if a summary-judgment motion is filed before discovery is complete, the trial court may postpone ruling on the motion to permit depositions to be taken and other discovery to be had.  M.R.C.P. 56(f); *see Owens v. Thomae*, 759 So. 2d 1117, 1120 (Miss. 1999).  Indeed, Rule 56(f) "contemplates that completion of discovery in some instances is desirable and necessary before a court can determine that there are genuine issues as to the material facts."  *Smith v. H.C. Bailey Cos.*, 477 So. 2d 224, 232 (Miss. 1985).  "This is especially true where the party seeking to invoke the protections of Rule 56(f) claims the necessary information rests within the possession of the party seeking summary judgment." *Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 308 (Miss. 1999).  We review the denial of a Rule 56(f) motion to continue for abuse of discretion.  *Id.* at 307.

## II.      Diligence

¶26.    The trial court denied Roberts's Rule 56(f) motions partly due to what it perceived as a lack of diligence by Roberts to obtain the defendants' depositions.  In its first summary-

judgment order, the court found Roberts's Rule 56(f) motion should be denied because his complaint had "been pending over fifteen (15) months." The court then echoed this sentiment in its second summary-judgment order, finding Roberts "had ample time for discovery."[4]

¶27. Of course, "Rule 56(f) is not designed to protect the litigants who are lazy or dilatory." *Owens*, 759 So. 2d at 1120 (quoting *Marx v. Truck Renting & Leasing Ass'n, Inc.*, 520 So. 2d 1333, 1344 (Miss. 1987)). But the record here does not support a finding that Roberts had been "lazy or dilatory." Instead, just after the answers were filed, Roberts notified Jenkins and Warrior that he intended to depose them at a date to be determined. Though the record shows Roberts waited until a year had passed to file his first motion to compel, the record indicates Roberts had been taking steps during this year to work with opposing counsel to schedule the depositions. *See id.* ("[N]ormally the party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the possession of the other party.").

¶28. In *Smith v. H.C. Bailey Companies*, we reversed a summary-judgment order as "prematurely granted." *Smith*, 477 So. 2d at 232. "One of our reasons for so holding is to

---

[4] In its appellee brief, Warrior has argued the trial court did not abuse its discretion in denying Robert's motion to defer because Roberts had not been diligent in obtaining discovery. Roberts has responded to this argument with a motion to strike this portion of Warrior's brief. Having passed this motion for consideration of the merits, we now deny Roberts's motion.

Warrior's claim in its appellee brief that Roberts was not diligent in obtaining discovery is not a "new" issue raised for the first time on appeal. Instead, Warrior has merely quoted the trial court's order on this issue of diligence and has argued the court's assessment was correct. From the face of the trial court's judgments, the trial court clearly addressed this issue below.

discourage the practice of parties resisting discovery on the one hand and moving for summary judgment on the other." *Id.* Here, the record reflects that as soon as Roberts finally pinned down the defendants for depositions, they moved for summary judgment. While Rule 56(b) permitted the defendants to file their motion at any time, Rule 56(f) protects non-movants like Roberts who are unable to respond to summary-judgment motions due to delays in discovery not fully within their control.

¶29. For this reason, we find the trial court abused its discretion when it found Roberts lacked diligence in pursing discovery.

### III.     Need for Additional Discovery

¶30. The trial court also found Roberts's "Rule 56(f) motion failed to demonstrate specifically how the discovery he seeks will enable him to meet and defeat the pending summary judgment[.]" As we said in *Prescott*, "[t]he party opposing summary judgment may not rely on vague assertions that discovery will produce needed, but unspecified, facts[.]" *Prescott*, 740 So. 2d at 308. Rather, "the party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Id.* But, here, Roberts provided specifics.

¶31. By affidavit attached to his motions, he laid out what discovery he planned on conducting, when that discovery should be completed, and what facts he intended to gather. *See* M.R.C.P. 56(f). In particular, Roberts attested that he intended to depose Jenkins and

11

Warrior, two of the named defendants. These depositions were scheduled in the upcoming weeks. And these depositions would enable him to prove not only that Jenkins and Smith had maliciously and intentionally interfered with Roberts's employment at Warrior but also that Warrior's official reason for terminating him—reduction in workforce—was not the actual reason he was fired.

¶32. We find this case to be similar to *Treasure Bay Corporation v. Ricard*, 967 So. 2d 1235, 1243 (Miss. 2007). In that case, involving dram-shop liability, this Court found the plaintiff diligently tried to depose the allegedly overserved witness, who resisted due to pending related criminal charges. *Id.* Morever, we found that witness's "testimony would allow the court to determine whether issues of fact remain whether the defendants, specifically Treasure Bay, served [the witness] alcohol while he was visibly intoxicated." *Id.*

¶33. Here, we find Jenkins's, Warrior's, and Parker's deposition testimony will allow the trial court to determine if issues of fact remain as to whether Warrior, Jenkins, Smith, and Boots Smith conspired together to wrongfully terminate and/or intentionally interfere with Roberts's employment contract. Given the importance of their testimony, the trial court abused its discretion when it granted summary judgment just weeks before they were scheduled to be deposed.

**Conclusion**

¶34. "Justice is served when a fair opportunity to oppose a motion is provided—*because consideration of a motion for summary judgment requires a careful review by the trial court*

12

*of all pertinent evidence in a light most favorable to the nonmovant*." ***Cunningham v. Lanier***, 555 So. 2d 685, 686 (Miss. 1989) (emphasis in original). For this reason, we find the trial court abused its discretion when it ruled on the defendants' motions for summary judgment before pending discovery had been completed. Because we find additional discovery is necessary, we decline to address the merits of the defendants' motions for summary judgment. We reverse the judgments in favor of the defendants without prejudice. And we remand this case to the trial court for further proceedings consistent with this opinion. Once discovery is complete, the defendants may renew their motions on the grounds already raised, as well as any other grounds.

¶35. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR.**