# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00283-COA

JOHN ANTHONY MANSOUR, GEORGE
MANSOUR JR. AND MICHAEL MANSOUR

APPELLANTS

v.

GENE G. STOCK

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/2017 |
| TRIAL JUDGE: | HON. JANACE H. GOREE |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | PHILIP MANSOUR JR. |
| ATTORNEY FOR APPELLEE: | JAMES MORTIMER CREWS III |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 11/20/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     John Anthony Mansour, George Mansour Jr., and Michael Mansour filed an action for trespass against Gene Stock (Stock), requesting actual and punitive damages for their injuries. In return, Stock filed a counterclaim asserting that the Mansours had caused injury to his hardwood timber and also sought damages. The Washington County Chancery Court found that the Mansours did not meet their burden of proof, dismissed their claim, and found that Stock did not put on evidence to substantiate his claims. Aggrieved, the Mansours appeal. Finding no error, we affirm.

**FACTS**

¶2.    Together, brothers John Anthony Mansour, George Mansour Jr., and Michael Mansour own an eighty-acre tract of land in Washington County, Mississippi. The land was purchased for recreational purposes, specifically to hunt birds, waterfowl, and deer. Portions of the land are submerged in water for most of the year, and as a result, the land was designated as a natural wetland preserve by the federal government. The land is surrounded by 1,800 acres owned by Stock and his family.

¶3.    During the 2014-15 waterfowl hunting season, the Mansours discovered that a two-to-four-foot-wide ditch had been created on their land, and two pipes had been removed. The two-to-four-foot-wide ditch started on the Mansours' land and extended to the Stock land. The ditch breached the natural levee surrounding the Mansours' land and caused the water on the land to escape. The loss of the water prevented the Mansours from using the land for waterfowl hunting during the 2014-15 hunting season. Although the Mansours did not witness anyone creating the ditch or removing the pipes, they asserted that Stock or someone at the direction of Stock was responsible.

¶4.    At trial, the Mansour brothers testified, along with Stock, Robert "Walker" Stock, William Thomas McKinley, and several expert witnesses. The Mansours called Walker, Stock's uncle, to testify. Walker testified that Stock had directed him to clear a line of roughly twenty to thirty feet around the property line that separated the Stock and Mansour properties on the Stock side. During his deposition, Walker stated that he was careful to stay away from the Mansour property. At trial, Stock admitted to instructing Walker to clear a roadway approximately twenty feet in width around the perimeter of the land with the intent

2

of creating an identifiable boundary line to prevent trespassing by both parties, but he maintained the clearing was done solely on his property. There was no other evidence presented that there was any other work done on or near the Mansours' land at the instruction of Stock.

¶5.    In addition to the ditch, the Mansours asserted that the removal of two pipes contributed to the drainage of water off their property. The Mansours maintain that one of the pipes is on their property and that the other is on Stock's property. However, at trial, Stock and his expert surveyor, Melvin Cannatella, testified that both pipes are located on the Stock property, and no evidence other than George Mansour's testimony was submitted to rebut Stock's claim. George Mansour testified that Stock's father gave him permission to place the pipes on Stock's land, but Stock was unaware of this arrangement and found it suspicious considering his family and the Mansours had recently been in easement litigation.[1]

¶6.    The Mansours also introduced evidence that Stock intended to install a game fence around their property to prevent deer hunting on their land. Stock admitted that he considered installing a game fence, however, after investigating the legality of it changed his mind. In response to their claims, Stock filed a counterclaim asserting that George Mansour and another unidentified individual entered onto his property and damaged his hardwood timber by causing water to escape from the Mansours' land and become trapped among his timber, causing the value to diminish. However, he did not present any evidence at trial to

---

[1] There is a history between the families regarding boundary lines and the usage of land, including one previously addressed by this Court. *See Ganier v. Mansour*, 766 So. 2d 3 (Miss. Ct. App. 2000).

support his assertions.

¶7.     After considering all of the evidence, the chancery court found that the Mansours offered no proof that they actually saw the water draining off their land or witnessed Stock, or someone under the direction of Stock, digging the ditch in question. The Mansours simply asked the court to infer that Stock had invaded their land, but the chancery court found that even with Stock's admissions surrounding removal of the pipes, his actions did not suffice the cause of action against him. Ultimately, the chancery court found that the Mansours did not meet their burden of proof by a preponderance of the evidence to show that Stock or anyone under the instruction of Stock committed trespass and subsequently did not award damages, actual or punitive. Additionally, the chancellor dismissed Stock's counterclaim because he put forth no proof to substantiate his claims. Aggrieved, the Mansours appeal.

## STANDARD OF REVIEW

¶8.     "This Court has a limited standard of review in appeals from the chancery court." *Jones v. Graphia*, 95 So. 3d 751, 753 (¶6) (Miss. Ct. App. 2012). "The standard of review of a chancellor's decision is abuse of discretion." *Id.* "An appellate court will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused [her] discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Id.* "However, on questions of law, appellate courts employ a de novo standard of review." *Id.*

## DISCUSSION

I.      *Whether the trial court erred in finding that the Mansours failed to establish sufficient proof of Stock's trespass and resulting damages.*

4

¶9.     The Mansours assert that circumstantial evidence is sufficient to prove that Stock trespassed onto their land and as a result deprived them of the enjoyment and use of the land for the 2014-15 waterfowl season.  This Court has held that "[l]iability for trespass requires proof of: (1) interference with the right of exclusive possession of one's land and (2) an invasion that is the direct result of some act committed by the defendant." *Gaw v. Seldon*, 85 So. 3d 312, 318 (¶23) (Miss. Ct. App. 2012) (internal quotation mark omitted). Furthermore, "because trespass is an intentional tort, there must be proof that the trespasser intended to enter upon the particular piece of land in question." *Id.*

¶10.    Here, the Mansours claim that the entry onto their land and removal of the pipes constituted a trespass.  Although Stock admitted to removing the pipes,[2] Stock, through his own testimony and that of an expert surveyor, diminished their claim by showing that the pipes were on his property and that it was within his rights as a landowner to remove them. As for the ditch, Stock put forth evidence that his trackhoe-bucket shovel was only capable of cutting ditches in six-feet widths; therefore, it would have been impossible for him to have created the two-to-four-foot ditch that the Mansours asserted caused the drainage.  This evidence was not rebutted.  Accordingly, we find that there was substantial evidence to support the chancery court's finding that the Mansours did not meet their burden of proof, therefore, this issue is meritless.

> II.     *Whether the trial court erred in failing to find that Stock's actions were intentional, malicious, and grossly negligent.*

---

[2] Walker testified that he recalled, after giving his deposition, that he did remove one pipe but was unclear at the time of the deposition whether it was a beaver dam or a pipe.

5

¶11. In addition to asserting that circumstantial evidence is sufficient to show trespass, the Mansours maintain that Stock's actions were intentional, malicious, and grossly negligent and consequently provide the basis for their punitive damages claim. The Mississippi Supreme Court has held that, "[p]unitive damages may be awarded as punishment for trespass where the proof shows the trespass was willful, grossly negligent or wanton." *R & S Dev. Inc. v. Wilson*, 534 So. 2d 1008, 1013 (Miss. 1988). However, the supreme court also held that "punitive damages are not recoverable absent an award of actual damages" and, in the case at hand, the Mansours have not proved that Stock trespassed onto their land to receive actual damages nor have they proved that his actions were intentional, malicious, and grossly negligent to receive punitive damages. *Prescott v. Leaf River Forest Prod. Inc*. 740 So. 2d 301, 312 (¶25) (Miss. 1999). Accordingly, this issue is without merit.

## CONCLUSION

¶12. After review of the record, we do not find that the chancery court abused its discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Therefore, we affirm the chancery court's decision.

¶13. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.**