# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01366-SCT

*MONTY Y. BROWN, INDIVIDUALLY AND AS*
*"MANAGER ONE" OF BROWNE, LLC;*
*BROWNSVILLE, LLC; AND BROWNE, LLC*

*v.*

*GEORGE C. McKEE, INDIVIDUALLY AND AS*
*"MANAGER" OF BROWNE, LLC AND AS*
*"MANAGER" OF BROWNSVILLE STATION,*
*LLC; AND BROWNSVILLE STATION, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2016 |
| TRIAL JUDGE: | HON. LARRY E. ROBERTS |
| TRIAL COURT ATTORNEYS: | CHARLES E. WINFIELD |
| | KEN R. ADCOCK |
| | WILBUR O. COLOM |
| | SCOTT WINSTON COLOM |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEN R. ADCOCK |
| | WILLIAM CHRISTOPHER IVISON |
| ATTORNEYS FOR APPELLEES: | ASHLYN BROWN MATTHEWS |
| | CHARLES E. WINFIELD |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 05/10/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. The trial court granted summary judgment in favor of George C. McKee and

Brownsville Station, LLC, dismissing Monty Y. Brown's claims against them. Brown

appeals, arguing the judge wrongly granted summary judgment without first allowing discovery. We disagree. Had summary judgment been granted on the merits—or lack thereof—of Brown's case, we would agree Brown should have been afforded an opportunity to conduct discovery under Mississippi Rule of Civil Procedure 56(f). But the judge did not grant summary judgment on the merits. He granted it based on the clear running of the statute of limitations. And, as the trial judge rightly found, none of Brown's discovery requests were aimed at establishing his claims were timely. Instead, they were zeroed in on proving his untimely claims.

¶2. Therefore, the trial judge did not abuse his discretion by denying Brown's Rule 56(f) motion for a continuance. We affirm the judgment dismissing Brown's untimely claims.

**Background Facts and Procedural History**

### I.     Brown's Divestment of Brownsville Station

¶3. Brown and McKee are former business partners. At one time they each owned a fifty-percent interest in Brownsville Station, which owned and operated an apartment complex in Starkville, Mississippi. But beginning in 2003, Brown began selling his interest to McKee. From July 2003 to January 2006, through a series of four agreements, Brown transferred all his interest units to McKee in exchange for $150,000 and title to the company

tractor.[1] As part of the final agreement, both parties agreed to a full and final release of any and all claims against each other.

## II.    Brown's Complaint Against McKee and Brownsville Station

¶4.    For six years, Brown had no dealings with McKee or Brownsville Station. Then, in September 2012, Brown received notice from the Secretary of State that McKee had filed articles of reinstatement for Brownsville Station and its subsidiary, BrownE, LLC. According to Brown, the September 2012 notice prompted him to tell his boss about his former business relationship with McKee. And his boss, who was also an attorney, suggested McKee had engaged in wrongdoing.

¶5.    So on April 13, 2013—almost ten years after the first transfer and seven years after the final transfer—Brown sued McKee and Brownsville Station in the Circuit Court of Oktibbeha County. Brown's complaint alleged that McKee had been Brown's personal attorney before they became business partners. Brown is a licensed general contractor, who had built several apartment buildings before going into business with McKee. Based on Brown's experience, McKee proposed that he and Brown enter a joint venture to build and

---

[1] The first transfer occurred in July 2003. Brown executed a stock sale transferring to McKee three of his one hundred interest units in Brownsville Station in exchange for $4,500. Brown also granted McKee an option to purchase Brown's remaining ninety-seven interest units for $145,000 and title to the company tractor. A month later, in August 2003, the two entered into a second agreement. Brown sold McKee additional interest units in exchange for $90,421.80 and title to the tractor, as well as other company property. Following the second agreement, Brown became a 17% interest holder and McKee an 83% interest holder of Brownsville Station.

A third agreement was executed in December 2003, in which Brown granted McKee a conditional option to purchase Brown's 17% interest for $55,078.20. The pair entered their fourth and final agreement in January 2006. Brown transferred his remaining interest in the LLC to McKee for $55,078.20.

operate an upscale apartment complex in Starkville. Brown would be responsible for the construction side, and McKee would handle the legal and financial aspects.[2]

¶6. To carry out this venture, McKee formed a limited liability company, BrownE, which McKee and Brown owned and controlled fifty/fifty. When the initial phase of the apartment complex was almost complete, however, the City of Starkville adopted an ordinance prohibiting development of new, unplatted apartments. According to Brown, this ordinance "had the effect of stopping further growth" of Brown and McKee's project. It also was the impetus for McKee's plot to get rid of Brown, whose construction services were no longer needed.

¶7. Brown's complaint alleged that McKee formed Brownsville Station, which became the sole owner of BrownE. Though Brown owned a fifty-percent interest in Brownsville Station, he asserted McKee formed the new LLC "solely to provide a vehicle to take secret or uniformed [sic] advantage of [Brown] by enabling [McKee], among other things, to change provisions of Brownsville LLC's Operating Agreement without [Brown's] informed consent." Brown further alleged that, during the 2003-2006 transactions, McKee hid important financial information and documentation about Brownsville Station and its true value, violating the fiduciary duties McKee owed as both Brown's attorney and fellow LLC member. Brown claimed McKee's action led to Brown's financial detriment. Brown had trusted McKee to provide all relevant information about the company. Instead, McKee fraudulently induced Brown to sell his interests below market value.

_____

[2] According to Brown's complaint, McKee had orally promised "to take care of" Brown as far as legal matters went.

4

¶8.    Brown's eight-count complaint[3] sought a constructive trust over fifty percent of Brownsville Station and the disgorgement of any fees and revenue Brown would have received had he remained a fifty-percent owner.

### III.    McKee's and Brownsville Station's Response

¶9.    On July 15, 2013, through separate responses, both defendants denied the allegations in Brown's complaint.  Both also moved to transfer the complaint to chancery court and to dismiss the action based on the statute of limitations.  On April 24, 2014, while the motions to transfer and dismiss were still pending, the defendants filed a joint motion for summary judgment, asserting the same statute-of-limitations argument.  They also pointed to the full and final release from the January 2006 final agreement, as well as the testimony of attorney Dolton McAlpin.

¶10.    At this point, the only discovery not opposed by the defendants was Brown's deposition of McAlpin.[4]  According to McAlpin's sworn affidavit and deposition, Brown had sought out and received McAlpin's independent legal advice about the January 2006 final agreement, which Brown signed and notarized in McAlpin's office.  In McAlpin's view, McKee had done nothing to improperly influence the advice McAlpin gave.  Nor did McKee ask McAlpin to conceal any information.  According to McAlpin, there had been no reason

---

[3] Brown's complaint lists his causes of action as "undue influence," "breach of fiduciary agreement by attorney," "breach of fiduciary duty as manager,"  "breach of fiduciary duty: trust and confidence," "negligent misrepresentation," "fraudulent misrepresentation," "breach of implied covenant of good faith and fair dealing," "fraud: deceit and concealment," and "accounting: constructive trust."

[4] McKee and Brownsville moved to quash all other discovery requests as intrusive and needless, given that, as a matter of law, Brown's claims were untimely.

5

to believe the circumstances surrounding the transfer were anything but fully discoverable by Brown.

## IV. Brown's Rule 56(f) Motion to Postpone

¶11. Brown opposed the motion for summary judgment with his own motion. He requested the summary-judgment ruling be postponed under Mississippi Rule of Civil Procedure 56(f). According to Brown, this rule entitled him to the discovery he had requested through pending motions to compel before the trial court ruled on the summary-judgment motion. Specifically, Brown wanted to see documents related to the value of Brownsville Station at the time Brown transferred his interest and to depose McKee on the circumstances surrounding the transfer.[5]

¶12. Brown also argued the statute of limitations had been tolled for three reasons: (1) because McKee had acted as Brown's attorney, it was reasonable for Brown not to discover McKee's wrongful actions; (2) McKee had fraudulently concealed Brown's cause

---

[5] Brown claimed he needed the following documents related to Brownsville Station's value at the time of the transfer: (1) loan documents for Brownsville Station; (2) bank account statements for Brownsville Station; (3) financial statements for Brownsville Station; (4) appraisals of the property of Brownsville Station; and (5) operating agreements for BrownE and Brownsville Station.

He also wanted to depose McKee on the following issues: (1) McKee's representation of Brown; (2) the operating agreement for BrownE and Brownsville Station; (3) the decision to form Brownsville Station; (4) the July 6, 2003 Stock Sale and Option Contract; (5) the August 7, 2003 Share Sale and Tractor Contract; (6) the December 2003 contract between Brown and McKee; (7) January 2006 sale and release; (8) the hiring of Dolton McAlpin; (9) why McKee withheld important financial documents for Brownsville Station from Brown prior to Brown selling his shares; (10) what legal representation, if any, McKee believed Brown had at the different sales of his shares; and (11) the reasons for each purchase of Brown's shares.

6

of action; and (3) McKee was equitably estopped from asserting the statute of limitations as a defense.

## V. Trial Court's Judgment

¶13. After denying the pending motion to transfer, the trial judge denied Brown's motion to postpone and granted the defendants' motion for summary judgment. The judge agreed with McKee and Brownsville Station that Brown had filed his action at least four years too late. Brown's claims accrued, and thus the three-year statute of limitations began to run, by January 2006—the time of his alleged injury. And none of Brown's tolling arguments applied. Specifically, the trial judge found the "discovery rule" did not apply, because Brown's alleged injury *was not* latent. Instead, the true value of the company was discoverable at the time of the transfer. And Mississippi Code Section 15-1-67's fraudulent-concealment provision was inapplicable because Brown could not demonstrate McKee engaged in some affirmative act to prevent Brown from discovering his claims. Finally, the extraordinary remedy of equitable estoppel did not apply because Brown could point to no action or misrepresentation by McKee to justify tolling the statute of limitations.

¶14. The trial judge also found Brown had failed to demonstrate additional discovery was warranted, because the discovery Brown sought "would not answer the necessary predicate question of when Brown's claim accrued, whether he had a latent injury, and when he knew or should have known of his claims." Instead, the information Brown sought "would only advance a potential finding regarding the extent of Brown's alleged damages." And "discovery related to the degree of harm . . . is of no consequence to the defendants' motion."

7

Moreover, the trial court noted Brown should have in *his* possession the information necessary to prove when he reasonably discovered his injury and thus did not need discovery from McKee. Because summary judgment had been granted and Brown's Rule 56(f) motion had been denied, the trial court dismissed Brown's pending motions to compel as moot.

¶15.    After the trial court entered its final judgment, Brown appealed.[6]

**Discussion**

¶16.    "Rule 56(b) permits a defendant to move for summary judgment 'at any time.'" ***Roberts v. Boots Smith Oilfield Servs., LLC***, 200 So. 3d 1022, 1026 (Miss. 2016) (quoting Miss. R. Civ. P. 56(b)). Under Rule 56(c), "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Relevant to this case, summary judgment shall be granted if no genuine issue of material fact exists concerning the question of the running of the statute of limitations. ***Smith v. Sanders***, 485 So. 2d 1051, 1053 (Miss. 1986). And we review the grant of summary judgment de novo. ***Prescott v. Leaf River Forest Prods., Inc.***, 740 So. 2d 301, 308 (Miss. 1999).

¶17.    "But if a summary-judgment motion is filed before discovery is complete, the trial court may postpone ruling on the motion to permit depositions to be taken and other discovery to be had." ***Roberts***, 200 So. 3d 1022, 1026 (citing Miss. R. Civ. P. 56(f); ***Owens***

---

[6] The order granting summary judgment and denying discovery did not dispose of the defendant's counterclaims. But pursuant to Mississippi Rule of Civil Procedure 54(b), the trial court certified the judgment as final, paving the way for Brown to file an appeal.

8

***v. Thomae***, 759 So. 2d 1117, 1120 (Miss. 1999)). We review the denial of a Rule 56(f) motion to continue for abuse of discretion. ***Prescott***, 740 So. 2d at 307.

¶18. With this standard in mind, after de novo review, we agree there are no genuine issues of material fact concerning the running of the statute of limitations. Brown's claims are indisputably time-barred. Moreover, the trial court did not abuse its discretion when it denied Brown's motion for postponement to conduct discovery, as none of Brown's discovery requests were aimed at proving his untimely claims were not barred.

### I.     Brown's claims accrued by January 2006.

¶19. Both sides agree Section 15-1-49's three-year statute of limitation applies to Brown's claims. Miss. Code Ann. § 15-1-49(1) (Rev. 2012). Brown sued McKee and the LLC they jointly owned, Brownsville Station, for actions McKee allegedly took from 1997 to 2006, which culminated in Brown selling the remainder of his interest in the apartment complex to McKee in January 2006. So Brown's cause of action against McKee accrued in January 2006, when "it [came] into existence as an enforceable claim." ***Anderson v. LaVere***, 136 So. 3d 404, 411 (Miss. 2014). Under Section 15-1-49(1), Brown had to file suit within three years from the completion of the sale "and not after." But Brown did not file his complaint until April 2013—years after Section 15-1-49's time bar. Thus, clearly, McKee and Brownsville Station are entitled to summary judgment.

¶20. Brown seeks refuge in Section 15-1-49(2)'s tolling provision. But this provision applies only to actions "involv[ing] latent injury or disease." Miss. Code Ann. § 15-1-49(2) (Rev. 2012). Here, Brown's alleged injury—underselling his interest in the company—was

not latent. The true value of the apartment complex at the time of sale was reasonably discoverable—especially to someone like Brown, who according to his own pleading had experience building apartments in Starkville. That Brown *chose* to trust McKee and not question the numbers, documents, or McKee's motives does not make this information "inherently undiscoverable."[7]

¶21. Moreover, Section 15-1-49(2) delays a claim from accruing only until "the plaintiff has discovered, *or by reasonable diligence* should have discovered, the injury." (Emphasis added.) And, here, reasonable diligence should have led to the discovery of Brown's alleged injuries well before April 2010—three years before he filed his complaint. But, by his own admission, Brown did not exercise reasonable diligence. Instead, he did nothing for six years.

¶22. Sending this issue back for discovery under Rule 56(f) will not lead to a different result. Why would Brown need discovery from McKee to show when *he* (Brown) reasonably learned of his injury? What efforts Brown took to discover his claims is information within Brown's knowledge—and not in McKee's and Brownsville Station's exclusive possession. *See Prescott*, 740 So. 2d at 308 (requiring "the party invoking Rule 56(f) . . . [to] show what steps have been taken to obtain access to the information allegedly within the exclusive possession of the other party"). Because Brown produced no such information but instead asserted the opposite—that he did nothing for six years—the trial judge correctly found there

---

[7] ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161, 168 (Miss. 1999).

was no genuine issue of material fact that Brown's claims accrued in January 2006, when Brown signed the final agreement.

## II. Discovery would not enable Brown to establish a fraudulent-concealment claim.

¶23. Importantly, *all* of Brown's claims accrued by January 2006—including those based on McKee's alleged fraud. "A fraud claim 'accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud.'" ***Sanderson Farms Inc. v. Ballard***, 917 So. 2d 783, 789 (Miss. 2005) (quoting ***Dunn v. Dent***, 169 Miss. 547, 153 So. 798 (1934)). And, here, the sale McKee's fraud allegedly induced was completed by January 2006. So this is when McKee's fraud was consummated and the three-year clock started to run.

¶24. Brown asserts he is saved from this time-bar because of "fraudulent concealment." But fraudulent concealment is a statutory tolling provision[8] that requires "the party purporting that there was fraudulent concealment" to show two things—"(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) and due diligence was performed on their part to discover it." ***Channel v. Loyacono***, 954 So. 2d 415, 423 (Miss. 2007) (quoting ***Stephens v. Equitable Life Assurance Soc'y of U.S.***, 850 So. 2d 78, 84 (Miss. 2003)). And Brown has shown neither.

---

[8] Under Section 15-1-67, "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." Miss. Code Ann. § 15-1-67 (Rev. 2012).

¶25. Brown has not alleged—let alone tried to prove—McKee took any affirmative act after Brown cashed out in January 2006 to prevent Brown from discovering his claim. Instead, Brown merely asserts that McKee had control over all the documents. But Brown "cannot satisfy the 'affirmative act' requirement with mere allegations that the other party had complete control of the information." *Trustmark Nat'l Bank v. Meador*, 81 So. 3d 1112, 1119 (Miss. 2012).

¶26. Citing *Van Zandt v. Van Zandt*, 227 Miss. 528, 86 So. 2d 466 (1956), the dissent suggests that the affirmative-act requirement may be satisfied by McKee's mere silence, because, as a fellow LLC member and manager, McKee owed Brown fiduciary duties. But here we do not have the same facts. The type of silence that equated to fraudulent concealment in *Van Zandt*—the concealed sale of cotenants' land and the failure to turn over the pro rata share of the proceeds—is not present here. Brown's sale to McKee was by no means concealed from Brown, who was a party to the sale and accepted his agreed-upon proceeds for the interest transfer.

¶27. Moreover, this Court has held that "an act cannot be both an act of fraud in the inducement and an act of fraudulent concealment." *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 438 (Miss. 2010) (holding that "showing false financial records could not serve to have both fraudulently induced the Plaintiffs and fraudulently concealed from the Plaintiffs the underlying fraud claim").[9] And the act of omission both Brown and the dissent assert was

---

[9] In *Whitaker*, it was the parties' "subsequent dealing *after* the . . . fraudulent inducement" that entitled the plaintiffs to move forward with their fraudulent-concealment claim. *Id.* (emphasis added). In so holding, this Court distinguished *Whitaker* from the untimely fraud claim in *Dunn v. Dent*, 169 Miss. 574, 153 So. 798 (1934). "Unlike *Dunn*,

12

fraudulent concealment is McKee's alleged act of fraud in the inducement of Brown to sell his interest below its value.

¶28. This is the fatal flaw with Brown's discovery request. By his own admission, Brown is not seeking discovery to prove what happened *after* he transferred his interest in January 2006. He is seeking discovery on what happened *before*—as proof he was fraudulently induced into the transfer. As the trial judge rightly noted, "discovery of this type . . . is of no consequence" to the issue of whether Brown's claim was fraudulently concealed.

¶29. A party asserting Rule 56(f) as a means to postpone a summary-judgment ruling "must present specific facts why he cannot oppose the motion and must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Prescott*, 740 So. 2d at 308 (citations omitted). Brown cannot do this, because his discovery requests are not aimed at showing a genuine issue of fact on whether McKee, through *subsequent* dealings with Brown, fraudulently concealed Brown's cause of action. *Whitaker*, 32 So. 3d at 438.

¶30. But even assuming, as the dissent asserts, McKee's mere silence as an LLC member is sufficient to establish an affirmative act of concealment, Brown still has to show due diligence. *Channel*, 954 So. 2d at 423. And certainly discovery would not aid Brown in establishing this second requirement of fraudulent concealment. Again, Brown does not need discovery from McKee to show what efforts he (Brown) took to discover McKee's alleged

_____

the Plaintiffs' complaint in today's case alleged *subsequent dealings and communication between the parties*, such that a jury determination as to whether the Plaintiffs used due diligence in discovering their fraud claim is necessary." *Whitaker*, 32 So. 3d at 437-38 (emphasis added).

13

fraud. *See Prescott*, 740 So. 2d at 308 (noting Rule 56(f) is especially designed to protect a party who "claims the necessary information rests within the possession of the party seeking summary judgment"). By his own uncontradicted assertion, Brown did nothing for six years, until a 2012 letter from the Secretary of State's office prompted him to talk to his boss, an attorney, about what happened between 2003 and 2006.

¶31. Brown would have borne the burden at trial to prove that fraudulent concealment delayed his claim from accruing. *See Channel*, 954 So. 2d at 423. So at the summary-judgment stage, Brown bore the burden to produce evidence establishing a triable claim for fraudulent concealment. *See Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88-89 (Miss. 2013). Because none of Brown's discovery requests would help him meet this burden of production, the trial court did not abuse its discretion when it denied Brown's Rule 56(f) motion for postponement and dismissed Brown's pending motions to compel as moot.

### III. Nor would discovery enable Brown to prove equitable estoppel.

¶32. Finally, Brown argues for equitable estoppel. But Brown's equitable-estoppel claim does not save him from summary judgment either.

¶33. "Equitable estoppel is generally defined as 'the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.'" *Kimball Glassco Residential Ctr., Inc. v. Shanks*, 64 So. 3d 941, 947 (Miss. 2011) (quoting *Simmons Housing, Inc. v. Shelton*, 36 So. 3d 1283, 1287 (Miss. 2010)). It is "an extraordinary remedy . . . that should be applied

14

with caution." *Id.* And to apply it to a statute of limitations, "[i]nequitable or fraudulent conduct must be established[.]" *Id.* (quoting *Trosclair v. Miss. Dep't of Transp.*, 757 So. 2d 178, 181 (Miss. 2000)).

¶34. As already discussed, Brown has pointed to no fraudulent conduct or misrepresentation by McKee that would justify applying the extraordinary remedy of preventing McKee and Brownsville from asserting the running of the statute of limitations. So why would he need discovery from McKee to prove what McKee said or did to induce Brown not to pursue a cause of action—especially since Brown's own uncontradicted assertion is that he had zero conversation or interaction with McKee following the January 2006 Final Agreement? Thus, as with Brown's discovery-rule and fraudulent-concealment claims, Brown cannot specifically demonstrate how a Rule 56(f) postponement would enable him by discovery to establish his equitable-estoppel claim. *See Prescott*, 740 So. 2d at 308.

### Conclusion

¶35. Given the nature of Brown's allegations, it is tempting to allow him to pursue his untimely claims through discovery. But "the fact that a barred claim is a just one or has the sanction of a moral obligation does not exempt it from the limitation period." *Smith v. Sneed*, 638 So. 2d 1252, 1263 (Miss. 1994). Mississippi's limitations statutes "apply with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case." *Id.* Instead, we must abide by the "legislative prerogative" to establish time boundaries.

15

¶36. Here, defendants McKee and Brownsville Station met their burden to prove all of Brown's claims fell outside the legislatively established time boundary. And Brown failed to specifically demonstrate how postponing the grant of summary judgment would enable him through discovery to rebut this undisputed fact. Therefore, we affirm the trial judge's grant of summary judgment in favor of McKee and Brownsville Station based on Section 15-1-49(1)'s time bar.

¶37. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND ISHEE, JJ.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶38. The majority affirms the trial court's judgment that Brown was not entitled to discovery on his claims that the statute of limitations was tolled under the discovery rule or the doctrines of equitable tolling and fraudulent concealment. But, because Brown alleges that he was defrauded by a person who had a duty to disclose material information but omitted to do so, I would find that he has stated claims sufficient to warrant discovery. Therefore, I would hold that the trial court's grant of summary judgment was premature. The case should be reversed and remanded.

*A. Facts*

¶39. Brown filed his complaint on April 23, 2013. He alleged that McKee was an attorney who had provided legal services to him in various matters for more than a decade. He alleged that McKee had approached Brown, who was a general contractor, and presented to him a

proposal that they jointly acquire real estate and develop and operate an apartment complex. After Brown had agreed, McKee prepared the certificate of formation for BrownE, LLC, in which Brown and McKee each owned a fifty percent economic and governing interest. Brown alleged that McKee was a manager of BrownE, LLC.

¶40. According to the complaint, after construction of the apartment complex was underway, the City of Starkville enacted an ordinance that prohibited the development of new apartments and consequently prevented further growth of the business. Brown alleged that this change in the law meant that his skills no longer were required, prompting McKee to seek to divest Brown of his interest in BrownE, LLC. He alleged that, to this end, McKee convinced Brown that a second, successor, limited liability company was necessary, leading to the formation of Brownsville Station, LLC, in 2000. Brown alleged that McKee was the manager of Brownsville Station, LLC.

¶41. The crux of Brown's claims was his allegation that, after the formation of Brownsville Station, LLC, McKee persuaded him to enter into a series of option contracts, detailed in the majority opinion, whereby McKee purchased Brown's entire interest for $150,000, an amount far less than half the appraised value of the LLC. Brown contended that McKee fraudulently had concealed the true value from him. Brown alleged that he first had discovered his business partner's deception in 2012 when Brownsville Station, LLC, filed with the Secretary of State articles of reinstatement that named Brown as the manager and registered agent for the company. At that point, Brown sought the advice of an attorney, who advised that he obtain legal representation.

¶42. McKee moved to dismiss Brown's complaint on the ground that it had been filed outside the three-year statute of limitations.[10] McKee also asserted that Brown had signed a "Conveyance, Full and Final Release and Hold Harmless Agreement" by which he voluntarily had relinquished any causes of action against McKee concerning the conveyance of his shares, and that Brown had entered into this agreement after consultation with independent counsel of his own choosing, Dolton McAlpin.

¶43. Following the motion to dismiss, Brown vigorously sought discovery, which McKee vigorously resisted. McKee sought protective orders, asserting that, because the action was untimely, he faced an undue burden in responding to Brown's discovery requests. On April 14, 2014, McKee filed a motion for summary judgment in which he pled the statute of limitations. Brown filed a response, arguing that genuine issues of material fact existed concerning the statute of limitations due to the discovery rule, as well as the doctrines of equitable estoppel and fraudulent concealment. He further alleged that, due to the fiduciary relationship, he could not have discovered McKee's misconduct until he had happened to consult an attorney in 2012. He asked that, because of the lack of discovery, the trial court enter a Rule 56(f) order continuing the summary judgment issue and also requiring that the defendants cooperate in discovery.

¶44. Brown submitted his deposition and later, a supplemental affidavit averring that McKee had denied him access to documents in McKee's sole possession that were related to the value of Brownsville Station, LLC, including refinancing of the $2.25 million

___

[10] *See* Miss. Code Ann. § 15-1-49(1) (Rev. 2012).

mortgage signed solely by McKee, emails, letters, appraisals, loan documents, and closing statements. Brown claimed that he had not known of the existence of an appraisal showing the true value of the company property until shortly before he filed his lawsuit. He contended that McKee was the only person in possession of the documents and he had been unable to obtain them from the lender, which no longer was in business. Brown also submitted the full deposition of the attorney, Dolton McAlpin. McAlpin did not recall having spoken to Brown without McKee's being present. He testified that he reviewed the terms of the agreement with Brown for about thirty or forty minutes, but gave Brown no advice about the amount he was receiving for his interest or whether it was a "good deal" for him.

¶45.    Before any rulings on the pending motions, all the judges of the Sixteenth Circuit Court District recused themselves, and on June 28, 2016, this Court appointed a special judge. The special judge set all pending motions for hearing on July 8, 2016. However, the special judge never ruled on McKee's motion to dismiss. Instead, he denied Brown's motions to compel discovery and for a continuance, granted McKee's motions for a protective order, and granted summary judgment to McKee on the ground that there was no genuine issue of material fact that the statute of limitations barred Brown's claims.

> *B. The trial court abused its discretion by denying Brown's motion for a continuance for additional discovery and granting summary judgment to McKee.*

¶46.    The record in this case reflects an almost complete lack of discovery prior to the grant of summary judgment. According to the Mississippi Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised

19

by the claims or defenses of any party." M.R.C.P. 26(b)(1). "It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the trial court may grant a protective order limiting discovery if "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." M.R.C.P. 26(d). Importantly, "[e]rroneous denial of discovery is ordinarily prejudicial in the absence of circumstances showing it is harmless." ***Dawkins v. Redd Pest Control Co.***, 607 So. 2d 1232, 1236 (Miss. 1992) (quoting ***Weahkee v. Norton***, 621 F.2d 1080, 1083 (10th Cir. 1980)).

¶47.    This Court has discussed the criteria for granting a continuance to permit additional discovery in defense of a motion for summary judgment under Rule 56(f), which provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

M.R.C.P. 56(f). A party requesting a continuance under Rule 56(f) to obtain additional discovery "must present specific facts why he cannot oppose the motion and must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" ***Stanley v. Scott Petroleum Corp.***, 184 So. 3d 940, 942 (Miss. 2016) (quoting ***Prescott v. Leaf River Forest Prods., Inc.***, 740 So. 2d 301, 308 (Miss. 1999)). The party requesting a continuance also must show the steps taken to obtain the necessary information.

20

*Stanley*, 184 So. 3d at 942. The Court has held that, in presenting these requisite facts, the party requesting a continuance need not submit written requests or affidavits to obtain relief under Rule 56(f). *Id.*

¶48.    Rule 56(f) "protects against improvident or premature grants of summary judgment and is to be applied liberally." *Id.* The trial court should grant the motion for a continuance if the party has made the requisite showing, has been diligent, and has acted in good faith. *Id.* Of particular relevance to this case, this Court specifically has disapproved of "the practice of parties['] resisting discovery on the one hand and moving for summary judgment on the other." *Smith v. H.C. Bailey Companies*, 477 So. 2d 224, 234 (Miss. 1985).

¶49.    In his Rule 56(f) motion, Brown requested discovery of loan documents, bank account statements, and financial statements for Brownsville Station, LLC. Additionally, he requested appraisals of property owned by BrownE, LLC, and Brownsville Station, LLC, and the operating agreements of the two companies. He argued that these documents would show the value of the property and the roles and responsibilities that McKee and Brown had with respect to the operation of the companies. He also requested the opportunity to depose McKee, which deposition, he argued, would address matters including whether McKee had withheld the financial documents from Brown. Brown argued that this information was relevant to the statute of limitations issue.

¶50.    The record reflects that, not only did Brown specify in his Rule 56(f) motion what discovery could show, he was diligent in pursuing the requested discovery by timely propounding discovery requests, filing motions to compel, and requesting hearings on the

21

motions. The trial court erred by finding that discovery would not have aided Brown. The trial court had no basis for its finding that Brown possessed the documents he requested and which Brown alleged were not in his possession. Because this was a fact finding on a genuinely disputed issue, it was inappropriate on summary judgment. The essence of Brown's claims was that McKee, a fiduciary, had concealed the documents from him and his requests for discovery of the documents and the deposition of McKee reasonably were calculated to lead to the discovery of evidence relevant to the discovery rule, fraudulent concealment, and equitable estoppel, notwithstanding the trial court's conclusion that such information pertained only to damages.

¶51.    Ordinarily, if a party's claims survive a motion to dismiss, discovery proceeds before that party faces a motion for summary judgment. This case is in a unique procedural posture because the trial court never ruled on McKee's motion to dismiss. Instead, the trial court proceeded to rule on the motion for summary judgment, concluding that, because Brown could not prove that any tolling provision applied to the statute of limitations, no discovery was necessary. I would find that, because Brown stated claims that the statute of limitations was tolled, he was entitled to discovery so he could attempt to meet his burden to prove that genuine issues of material fact existed on such claims. I turn now to a review of the requirements for the discovery rule, equitable estoppel, and fraudulent concealment, then to a discussion of their application to this case.

¶52.    Under the discovery rule, "[i]n actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue

until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2) (Rev. 2012). The Court has said that:

> [T]he statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute. Therefore, the critical question with which we are confronted is whether, in a summary judgment context, we can identify as a matter of law, the point at which [the plaintiff] knew or should have known or should have made an inquiry, based on the information available to him.

*Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (Miss. 2009).

¶53. For equitable estoppel to toll the statute of limitations, "the plaintiff must show by a preponderance of evidence that '(1) it was induced by the conduct of [the defendant] not to file its complaint sooner, (2) resulting in its claim['s] being barred by the [applicable] limitations, and (3) [the defendant] knew or had reason to know that such consequences would follow.'" *Townes v. Rusty Ellis Builder, Inc.*, 98 So. 3d 1046, 1055 (Miss. 2012) (quoting *Harrison Enters., Inc. d/b/a Paulding Cable Co. v. Trilogy Commc'ns, Inc.*, 818 So. 2d 1088, 1095 (Miss. 2002)). "Inequitable or fraudulent conduct must be established to apply the doctrine of equitable estoppel to a statute of limitations." *Ray v. Keith*, 859 So. 2d 995, 997 (Miss. 2003). The issue of equitable estoppel "becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment." *Townes*, 98 So. 3d at 1055.

¶54. Regarding the doctrine of fraudulent concealment, Mississippi Code Section 15-1-67 provides the following:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such

23

fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67 (Rev. 2012). The general rule is that the doctrine of fraudulent concealment will toll the statute of limitations of any cause of action if the plaintiff shows "that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on [his] part to discover it." *Stephens v. Equitable Life Assurance Soc'y of the U.S.*, 850 So. 2d 78, 84 (Miss. 2003). Both elements present fact questions for determination by a jury. *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 436 (Miss. 2010). But "[w]here a fiduciary relationship exists, silence may be fraud." *Grand Legacy, LLP v. Gant*, 66 So. 3d 137, 145 (Miss. 2011). "The 'silence must relate to a material fact or matter known to the party and as to which it is his legal duty to communicate to the other contracting party.'" *Id.*

¶55.    Contrary to the majority's decision, proof of an affirmative act of concealment is not required when the defendant had fiduciary duties toward the plaintiff requiring disclosure of material information. In *Van Zandt v. Van Zandt*, 227 Miss. 528, 534, 86 So. 2d 466, 468 (1956), several cotenants owned a large parcel of real property in Simpson County. Several of the cotenants sued another of the cotenants, Dr. Homer Van Zandt, alleging that Dr. Van Zandt had used his power of attorney to sell timber from the land, had failed to disclose the transaction to his fellow cotenants, and had converted all funds received from the sale to his own use. *Id.* Dr. Van Zandt asserted that the action was barred by the statute of limitations. *Id.* at 535, 86 So. 2d at 468. The chancellor found that fraudulent concealment had tolled the statute of limitations and entered a judgment for the cotenants in the amount of their *pro rata*

24

share of the sale proceeds with interest. *Id.* Dr. Van Zandt appealed, arguing that the statute of limitations had barred the action. *Id.* at 536, 86 So. 2d at 469.

¶56.    This Court rejected Dr. Van Zandt's argument. *Id.* at 539, 86 So. 2d at 470. This Court held that Dr. Van Zandt was in a fiduciary relationship with his fellow cotenants, but he had failed to disclose the sale or make an accounting to them. *Id.* at 538, 86 So. 2d at 470. We held that this conduct amounted to "a concealed fraud" and said that "[w]e recognize the general rule that in the absence of a fiduciary relationship some affirmative act of concealment is necessary to establish a concealed fraud, but this is not the case before us" because the cotenants were in a fiduciary relationship. *Id.* at 538-39, 86 So. 2d at 470. This Court adjudicated that, under the prevailing rule, a person in a fiduciary relationship is under a duty to reveal the facts to the other party, and his "silence when he ought to speak" amounts to a fraudulent concealment. *Id.* at 539, 86 So. 2d at 470. The Court explained that:

> It is the prevailing rule that, as between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment within the rule under consideration.

*Id.* at 539, 86 So. 2d at 470 (citing L.S. Teller, Annotation, *What Constitutes Concealment Which Will Prevent Running of Statute of Limitations*, 173 A.L.R. 576, 588 (1948)). ***Van Zandt*** also cited ***Buckner v. Calcote***, 28 Miss. 432 (1855), the case which initially established this principle in Mississippi law. *Id.* at 539, 86 So. 2d at 470. Citing Section 742 of the Mississippi Code of 1942, an earlier iteration of Section 15-1-67, the Court held that

25

"it follows from what has been said that the action of the [cotentants] is not barred by any statute of limitation or laches . . . ." *Id.* at 539, 86 So. 2d at 470. More recently, it has been recognized that in Mississippi "an omission may be considered an affirmative act in cases where there exists an affirmative duty of disclosure." *Hare v. City Fin. Co.*, 269 F. Supp. 2d 766, 770 (S.D. Miss. 2003).

¶57. Brown's primary claim is that, during a time when he and McKee were fiduciaries, each to the other, McKee concealed an appraisal of company-owned property and then bought out Brown's interest for far less than the property's appraised value, in violation of his fiduciary duties to Brown. While both parties make much of whether McKee was Brown's attorney during the subject transactions, it is clear that Brown has stated a claim that McKee, apart from McKee's status as a lawyer, had fiduciary duties toward him as a function of McKee's role as a managing member of the LLCs. In the complaint, Brown alleged specifically that McKee had fiduciary duties toward him as manager of BrownE, LLC, and Brownsville Station, LLC, and that his acts and omissions had breached the duties of care, loyalty, and fair dealing and violated the relationship of trust and confidence. Indeed, "[d]irectors and officers in a closely held corporation st[and] in a fiduciary relationship with the corporation and its members." *Brothers v. Winstead*, 129 So. 3d 906, 924 (Miss. 2014) (citing *Fought v. Morris*, 543 So. 2d 167, 171 (Miss. 1989)). This rationale applies to limited liability companies "with equal force." *Id.*

¶58. Regarding the discovery rule, McKee argued and the trial court found that, because Brown had access to all relevant documents and financial records, he cannot show the injury

26

was latent. The majority relies on this reasoning. However, not only does Brown dispute McKee's contention that he had access to the relevant documents during the transactions at issue, he alleges that McKee, in violation of his duty of disclosure, concealed these documents from him and actively misled him about the value of his interest. Brown was entitled to discovery to attempt to uncover facts with which to rebut McKee's allegation that the discovery rule does not apply. Further, Brown was entitled to discovery on the issue of equitable estoppel to attempt to show that McKee's conduct induced him not to file his complaint sooner and that McKee knew or had reason to know that legal action by Brown eventually could be found to be time barred due to such inducement.

¶59.    Concerning fraudulent concealment, discovery could lead to evidence that McKee, through his silence or otherwise, concealed relevant documents from Brown despite Brown's exercise of the amount of diligence that was due, considering the fiduciary relationship. If so, Brown could use that evidence to show that the statute of limitations was tolled due to fraudulent concealment. "Whether a plaintiff acted diligently in discovering fraud is generally a jury question." *Townes*, 98 So. 3d at 1056. *Van Zandt* clearly held that a fiduciary's silence when he ought to speak can constitute fraudulent concealment that tolls the statute of limitations. The majority disputes *Van Zandt*'s application to this case because it finds that, unlike the sale of timber in *Van Zandt*, in which both the sale and the proceeds from the sale were concealed from the cotenants, "Brown's sale to McKee was by no means concealed from Brown, who was a party to the sale and accepted his agreed-upon proceeds for the interest transfer." Maj. Op. at ¶ 26. But Brown's claim is not that McKee concealed

27

the *sale* from him. Rather, it is Brown's position that, when McKee purchased Brown's interest, McKee concealed from Brown material facts pertinent to the sale, particularly, the value of company property, in violation of his fiduciary duty to disclose such material facts to his fellow LLC member, Brown, before buying him out for far less than the true value of Brown's interest. There is no logical or legitimate reason to distinguish the fraudulent omissions in *Van Zandt* from the fraudulent omissions alleged in this case.

¶60. The majority relies on *Whitaker v. Limeco*, 32 So. 3d 429, 438 (Miss. 2010), to find that Brown has not stated a claim sufficient to toll the statute of limitations. *Whitaker* involved fraud claims, filed outside the statute of limitations, based upon misrepresentation of the value of corporate assets by the corporation's managing director. *Id.* at 431-32. *Whitaker* recognized that "[t]he proper test" of fraudulent concealment "is whether a reasonable person similarly situated would have discovered potential claims." *Id.* at 436. Critically, because no fiduciary relationship was implicated in *Whitaker*, the plaintiffs were required to prove an affirmative act of concealment. *Id.* at 436. In the Court's discussion of what is required to show an affirmative act of concealment, we rightly said that "an act cannot be both an act of fraud in the inducement and an act of fraudulent concealment." *Id.* at 438. The Court found that the plaintiffs' claims survived because they had alleged subsequent dealings and communication between the parties that amounted to fraudulent concealment of the earlier acts of fraudulent inducement. *Id.* at 437.

¶61. While *Whitaker* is applicable to cases in which an affirmative act of concealment is required, it is inapposite to this case, in which Brown has articulated a claim that McKee

28

failed to disclose material facts that he was under a fiduciary duty to disclose. Under *Van Zandt*, a fiduciary's silence when he ought to speak can amount to fraudulent concealment that tolls the statute of limitations. *Van Zandt*, 227 Miss. at 539, 86 So. 2d at 470. Therefore, Brown was entitled to discovery on the issue of whether a reasonable person in Brown's situation, entitled to rely, as he was, on McKee's fulfillment of his duty to disclose material facts, would have discovered his claims in the exercise of due diligence.

*C. Conclusion*

¶62. I would agree with the majority's disposition of this case if Brown's claims had involved arm's-length transactions. But because McKee owed Brown a fiduciary duty of disclosure, Brown's allegation that the statute of limitations was tolled because McKee withheld material facts demands that Brown be allowed the opportunity to discover evidence to prove his tolling arguments. Certainly, Brown's statute of limitations arguments ultimately may prove to be without merit, and summary judgment thus may become appropriate. But discovery must take place before such a determination can be made. Due to the lack of discovery on the issue of the running of the statute of limitations, the trial court's grant of summary judgment was premature. I would reverse the grant of summary judgment and remand for further proceedings.

**KING AND ISHEE, JJ., JOIN THIS OPINION.**

29